[Cite as *State v. Reese*, 2016-Ohio-557.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 14 MA 116 |
| V. | ) | |
| | ) | OPINION |
| LAMAR REESE, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Court of Common
                              Pleas of Mahoning County, Ohio
                              Case No. 2013CR828A

JUDGMENT:                     Affirmed

APPEARANCES:
For Plaintiff-Appellee          Paul Gains
                                Prosecutor
                                Ralph M. Rivera
                                Assistant Prosecutor
                                21 W. Boardman St., 6th Floor
                                Youngstown, Ohio 44503

For Defendant-Appellant         Attorney Rhys Cartwright-Jones
                                42 North Phelps St.
                                Youngstown, Ohio 44503-1130

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                                Dated: February 10, 2016

DONOFRIO, P.J.

{¶1} Defendant-appellant, Lamar Reese, appeals from a Mahoning County Common Pleas Court judgment convicting him of aggravated murder and aggravated robbery following a jury trial.

{¶2} On September 16, 2011, Aaron Triplett drove his brother Frankie Hudson, Jr., appellant, Jerome Miller, and one other unidentified person to Joshua Davis's house to purchase marijuana. At some point, the plan changed from buying the marijuana from Davis to stealing the marijuana from Davis. According to Triplett, he, appellant, and Hudson all had guns with them but they did not plan to assault Davis. When they arrived at Davis's house, Davis met Triplett and Hudson. The three went through Davis's house and into the garage to weigh the marijuana. Appellant, Miller, and the unidentified person waited in the car. According to Triplett, when he, Hudson, and Davis walked back toward the porch after retrieving the marijuana, they saw appellant standing in the driveway with his assault rifle. Davis began yelling. According to Triplett, Hudson then pulled out his gun and someone started shooting. Triplett saw both appellant and Hudson pointing their guns at Davis. Triplett fled from the scene. Davis died from multiple gunshot wounds.

{¶3} Triplett initially denied his involvement in the crime. Eventually, however, Triplett admitted his involvement and agreed to help the police in exchange for not being charged with any crimes. As part of his agreement, Triplett had to testify against appellant and Hudson.

{¶4} A Mahoning County Grand Jury indicted appellant on one count of aggravated murder, a first-degree felony in violation of R.C. 2903.01(B)(F), and one count of aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(1)(C), both with firearm specifications. Hudson was also indicted on aggravated murder and aggravated robbery charges with firearm specifications.

{¶5} Prior to trial, appellant and plaintiff-appellee, the State of Ohio, entered into a Joint Request for Stipulation of Use of Polygraph Test. Per this stipulation, the parties agreed that appellant would submit to a polygraph test. If appellant failed the polygraph test, then the results of the test would be admissible at trial. If, however,

appellant passed the polygraph test, the state would dismiss all charges against him. Appellant took the polygraph test and failed.

{¶6} Consequently, the matter proceeded to a jury trial. The jury listened to testimony from numerous witnesses including Triplett, who implicated appellant and Hudson. The jury also heard the results of the polygraph test. The jury found appellant guilty as charged.

{¶7} The trial court subsequently held a sentencing hearing where it sentenced appellant to 20 years to life in prison on the aggravated murder count, ten years on the aggravated robbery count, and three years on the two firearm specifications which the court merged for purposes of sentencing. The court ordered appellant to serve the sentences consecutively for a total prison term of 33 years to life. Appellant filed a timely notice of appeal on August 19, 2014.

{¶8} Appellant now raises two assignments of error. He concedes that we are to review both assignments of error for plain error because there were no objections in the trial court to the issues he now raises.

{¶9} Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). To prevail on a claim governed by the plain error standard, an appellant must demonstrate that the trial outcome would have been clearly different but for the alleged error. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996). With this standard of review in mind, we turn now to appellant's assignments of error.

{¶10} Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN ITS INSTRUCTIONS RELATIVE
TO THE ADMISSION OF POLYGRAPH TESTIMONY.

{¶11} In this assignment of error, appellant takes issue with the trial court's jury instruction regarding the polygraph test. As to the polygraph test results, the trial court instructed the jury:

The results of a polygraph examination have been admitted into evidence. The results obtained from the polygraph examination are not admitted to prove or disprove any element of the crime with which the Defendant is charged. Rather, the testimony is admitted to indicate that at the time of the examination, the Defendant was not telling the truth. You may consider the testimony for the purpose of testing the credibility of the Defendant.

(Tr. 677-678).

{¶12} Appellant asserts the court's instruction failed to comply with the fourth condition for admitting polygraph test results set out in *State v. Souel*, 53 Ohio St.2d 123, 372 N.E.2d (1978), at the syllabus.

{¶13} In *Souel*, the Ohio Supreme Court held that polygraph test results are admissible in a criminal trial for purposes of corroboration or impeachment as long as four conditions are met. *Id.* The fourth condition, which appellant takes issue with in this assignment of error, is:

(4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given.

*Id.*

{¶14} Appellant claims the court's instruction went beyond that set out in *Souel* and should not have included the instruction that the polygraph could be considered in determining whether appellant was telling the truth or that the jury could consider it for the purpose of testing appellant's credibility. But *Souel* specifically states in its syllabus that evidence of polygraph test results is admissible "for purposes of corroboration or impeachment." Corroboration and impeachment

are ways to test credibility and truthfulness. Thus, the Ohio Supreme Court has specifically indicated that polygraph evidence can be used for testing credibility as long as *Souel's* four conditions are met. Therefore, the trial court's instruction was a correct statement of the law.

{¶15} Moreover, the trial court's instruction tracked the language set out in the Ohio Jury Instructions, which provides:

> The results of a polygraph examination have been admitted into evidence. The results obtained from the polygraph examination are not admitted to prove or disprove any element of the crime with which the defendant is charged. Rather, the testimony is admitted to indicate at the time of the examination the defendant (was) (was not) telling the truth. You may consider the testimony for the purposes of testing the credibility of the defendant.

*Ohio Jury Instructions*, 2 CR Ohio Jury Instructions 409.23 (2015).

{¶16} The comment to this jury instruction states that the results of a stipulated polygraph examination are admissible for corroboration or impeachment if they are presented in accordance with *Souel*, 53 Ohio St.2d 123.

{¶17} "Ohio Jury Instructions is a compendium of standard instructions prepared by the Jury Instructions Committee of the Ohio Judicial Conference, and is generally followed and applied by Ohio's courts." *State v. Thompson*, 2d Dist. No. 22984, 2010-Ohio-1680, ¶174; *State v. Ferguson*, 10th Dist. No. 07AP-640, 2008-Ohio-3827, ¶47.

{¶18} Other appellate courts have found that where a jury instruction tracks the language of the corresponding Ohio Jury Instruction there is no plain error with the instruction. *State v. Harwell*, 2d Dist. No. 25852, 2015-Ohio-2966, ¶64 ("because the trial court's instruction as to 'cause' provided a correct statement of law and is taken almost verbatim from the Ohio Jury Instructions, the trial court did not err, let alone commit plain error, when it instructed the jury as such"); *State v. Moore*, 163

Ohio App. 3d 23, 2005-Ohio-4531, 836 N.E.2d 18, ¶86 (2d Dist.) ("These instructions are in accord with those set out in the Ohio Jury Instructions and therefore, it was not error, let alone plain error, for the trial court to use them."); *State v. Perry*, 8th Dist. No. 43992, 1982 WL 2506, *4 (July 29, 1982) (trial court's instruction on credibility fairly tracked the standard Ohio Jury Instructions charge, and therefore was a correct statement of the law).

**{¶19}** And at least one other court has approved the use of the exact same instruction as the trial court used here. In *State v. Russell*, 10th Dist. No. 03AP-666, 2004-Ohio-2501, the appellant argued the trial court committed plain error in allowing certain testimony by the polygraph examiner regarding the reliability of the polygraph and its probative value. On appeal, the court noted that the examiner's statement was clearly beyond the scope of permissible testimony. *Id.* at ¶48. But it stated that the trial court subsequently gave the correct instruction regarding the polygraph evidence:

> The results of a polygraph examination have been admitted into evidence. The results obtained from the polygraph examination are not admitted to prove or disprove any element of the crime with which the Defendant is charged. Rather, the testimony is admitted to indicate [whether] at the time of the examination, the Defendant was not telling the truth. You may consider the testimony for purposes of testing the credibility of the Defendant.

*Id.* The court found that this instruction was "correct, comprehensive, and clear." *Id.* at ¶49.

**{¶20}** The trial court's instruction complies with *Souel's* fourth condition and does not impermissibly go beyond the law set out in *Souel*. The instruction is a correct statement of the law set out in *Souel* that polygraph evidence maybe used for corroboration or impeachment, in other words to test credibility, as long as certain conditions are met. Additionally, Ohio Jury Instructions are generally followed and

accepted by Ohio courts. Plain error does not exist here where the trial court gave an instruction verbatim from the Ohio Jury Instructions that is a correct statement of the law. Moreover, appellant does not allege that the court's instruction was an incorrect statement of the law. And the identical instruction as the one given here has been approved by at least one other appellate court as correct, comprehensive, and clear.

{¶21} Accordingly, appellant's first assignment of error is without merit.

{¶22} Appellant's second assignment of error states:

THE COURT ERRED PLAINLY IN ALLOWING INTO EVIDENCE A STIPULATED POLYGRAPH ABSENT A PROPER FOUNDATION UNDER EVIDENTIARY RULE 702 FOR ITS ADMISSION.

{¶23} Here appellant contends the polygraph results did not meet Evid.R. 702's requirements for admissibility. Appellant contends the state failed to establish the general scientific reliability of a polygraph test. He asserts the state was required to offer evidence to guide the jury as to how they would determine whether the polygraph test was given in such a way as to yield a reliable result. Moreover, appellant argues this failure impacted his counsel's ability to cross-examine relative to the conditions under which the test was administered and possibilities for error as required by *Souel*, supra. Appellant also argues that his polygraph test was unreliable because he answered "yes" to a control question of whether he lived in Canada, when in fact he lives in the United States, and the polygraph test showed his "yes" answer was non-deceptive.

{¶24} In addition to the condition discussed in appellant's first assignment of error regarding the jury instructions, *Souel* set out three other conditions for admitting polygraph test results for purposes of corroboration or impeachment:

(1) The prosecuting attorney, defendant and his counsel must

sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

(2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

(3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting: (a) the examiner's qualifications and training; (b) the conditions under which the test was administered; (c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and, (d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

*Souel*, 53 Ohio St.2d at the syllabus.

**{¶25}** The first condition is not in dispute here. The parties signed a Joint Request for Stipulation of Use of Polygraph Test, which is part of the record.

**{¶26}** As to the second condition, Michael Lopresti, a polygraph examiner for the Ohio Bureau of Criminal Identification and Investigation (BCI) who administered the polygraph test to appellant, testified about his qualifications. Lopresti stated that he has been conducting polygraph tests for 29 years. (Tr. 258). And for the last 15 years his only job duty at BCI has been to administer polygraph tests. (Tr. 258). Lopresti testified that he attended a polygraph school for ten weeks and attends continuous training twice a year. (Tr. 259). Additionally, Lopresti testified that he is a member of the Ohio Association of Polygraph Examiners. (Tr. 259).

**{¶27}** As to the conditions of appellant's test, which is also part of *Souel's* second condition, Lopresti testified that all standard procedures were followed in administering appellant's test. (Tr. 278). These procedures included recording

appellant's blood pressure, respirations, and sweating during the test. (Tr. 260). Lopresti indicated that these three physiological responses are involuntary, which is why they are used. (Tr. 261). He discussed further procedures including providing appellant with information about the test, having him fill out standard forms, and going over medications appellant was taking. (Tr. 278). Lopresti stated that appellant indicated he was taking Coreg on a daily basis. (Tr. 281). Lopresti testified that Coreg would not affect the test. (Tr. 282). Lopresti stated that appellant indicated that he had not used illegal drugs or alcohol in the last 24 hours. (Tr. 281).

{¶28} Given this testimony by Lopresti, the second *Souel* condition was met. The above testimony was sufficient to convince the trial court that Lopresti was qualified to administer the polygraph test and that the test was conducted under proper conditions. There was no evidence to the contrary.

{¶29} As to the third condition, appellant's counsel cross-examined Lopresti extensively. (Tr. 300-315). Counsel cross-examined regarding Lopresti's qualifications. (Tr. 300-304). Counsel questioned him regarding appellant's actions during the test. (Tr. 305-308). Counsel also cross-examined Lopresti regarding the success rate of polygraph tests. (Tr. 308-309). Counsel then questioned Lopresti about the questions he asked appellant. (Tr. 310-314). Finally, counsel questioned him about the results he has garnered over his years of polygraph testing. (Tr. 315).

{¶30} This testimony demonstrates that the third *Souel* condition was met in this case. Appellant's counsel was able to cross examine Lopresti on every issue he deemed relevant. He questioned Lopresti about his qualifications, appellant's behavior and how it related to the test, the success rate of polygraph tests in general, the actual administration of the test, and the results of other polygraph tests that he has administered.

{¶31} Lopresti's testimony satisfies the first three *Souel* conditions for the admissibility of a polygraph test. Moreover, as discussed in appellant's first assignment of error, the trial court's jury instructions regarding the polygraph test satisfies the final *Souel* condition.

**{¶32}** Appellant suggests that the state was also required to present evidence that Lopresti's testimony met the requirements for expert testimony set out in Evid.R. 702(C):

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶33}** In examining whether Evid.R. 702 applied in place of the *Souel's* conditions for admission of polygraph test results, the Second District stated: "Until the Ohio Supreme Court holds otherwise, we are bound by the precedent established in *Souel* and *Davis.*" *State v. Irwin*, 2d Dist. No. 26224, 2015-Ohio-195, ¶34. The Ninth District has made similar comments: "We disagree with Weaver's conclusion that the law concerning the admissibility of polygraph tests [since the decision in *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)] has changed. *State v. Souel*, supra, is still the law in Ohio and has not been modified or overruled." *State v. Weaver*, 9th Dist. No. 97CA006686, 1997 WL 823965, at *7 (Dec. 31, 1997).

**{¶34}** We agree with the Second and Ninth Districts. The Ohio Supreme Court set out the conditions for allowing polygraph test results in *Souel*. The Court has not modified or changed these conditions.

**{¶35}** Moreover, the Ohio Supreme Court has recognized that a polygraph

test is not scientifically reliable:

> The nature of polygraphs is different from traditional scientific tests. Most, if not all, scientific tests involve objective measurements, such as blood or genetic typing or gunshot residue. In a polygraph test, the bodily response of the examinee to his answers is dependent upon the subjective interpretation thereof by the examiner. Inasmuch as the test is not perceived by the profession to be reasonably reliable, its admissibility is limited in Ohio to situations where the parties stipulate to its admission. *Souel*, supra.

*State v. Davis*, 62 Ohio St. 3d 326, 341, 581 N.E.2d 1362 (1991).

{¶36} Given that a polygraph test is not viewed as scientifically reliable, the state, in this case, could not have put forth evidence of the general scientific reliability of a polygraph test as appellant asserts it should have done in order to comply with Evid.R. 702(C). It is because the test is not generally viewed as scientifically reliable that polygraph results are only admissible upon stipulation by the parties. *Davis*, supra.

{¶37} In sum, the state met the four conditions for admissibility of polygraph test results. Therefore, plain error does not exist here.

{¶38} Accordingly, appellant's second assignment of error is without merit.

{¶39} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.
DeGenaro, J., concurs.