[Cite as *State v. Brown*, 2017-Ohio-7134.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 16AP-753 |
| | | (C.P.C. No. 15CR-5284) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Tyquan A. Brown, | : | |
| Defendant-Appellant. | : | |

## D E C I S I O N

### Rendered on August 8, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson*, for appellee. **Argued:** *Valerie B. Swanson.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Tyquan A. Brown, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty of one count of aggravated robbery, one count of tampering with evidence, and one count of having a weapon while under disability. For the following reasons, we affirm.

### I. Facts and Procedural History

{¶ 2} By indictment filed October 27, 2015, plaintiff-appellee, State of Ohio, charged Brown with one count of aggravated robbery in violation of R.C. 2911.01, a first-degree felony; one count of tampering with evidence in violation of R.C. 2921.12, a third-degree felony; and one count of having a weapon while under disability in violation of R.C. 2923.13, a third-degree felony. The aggravated robbery charge contained an

accompanying three-year firearm specification pursuant to R.C. 2941.145(A), and the tampering with evidence charge contained an accompanying one-year firearm specification pursuant to R.C. 2941.141(A).  Brown entered a plea of not guilty.

{¶ 3}  The matter proceeded to a jury trial on the aggravated robbery and tampering with evidence charges, and Brown elected to have a bench trial for the having a weapon while under disability charge.  At the trial commencing August 8, 2016, Maurice Moxley testified that during the early morning hours of October 18, 2015 he walked outside of his girlfriend's house to the driveway where he had parked his girlfriend's car, intending to go to a grocery store.  Moxley testified that when he approached the car, he saw a man in the front seat.  Moxley said he was startled, and he testified the man then opened up the car door, pointed a gun at Moxley, and told Moxley to empty his pockets.

{¶ 4}  Moxley, who is a concealed carry permit holder, testified that as he went to empty his pockets, his shirt lifted, exposing his holster on his right hip.  At that point, Moxley said the man in the car fired one shot from his gun and then started running away.  Moxley testified he yelled at the man to stop and then Moxley fired his own gun.  The man then jumped the fence and Moxley fired his gun again.  At that point, Moxley said his girlfriend came outside and he told her to call the police.  When the police arrived, Moxley gave a description of the man who had been inside the car.  Police apprehended Brown a short time later, and Moxley and his girlfriend identified Brown as the man who had been inside the car with the gun.

{¶ 5}  Chalice Corvi, Moxley's girlfriend, testified that around 1:30 a.m. on October 18, 2015, she heard Moxley unlock the car using the key fob and then heard some arguing.  Corvi said she then heard one gunshot followed by two more gunshots, so she ran to the door and saw Moxley chasing Brown.  Corvi then called 911 and talked to the police when they arrived.  After a short time, Corvi said the police drove her and Moxley in separate cars to the location where police had apprehended Brown a short distance away.  Corvi testified she identified Brown to police as the man she had seen in the altercation with Moxley.  When the police allowed Corvi to look at her vehicle after they arrested Brown, Corvi said "[e]verything was out of order" and a cell phone that had a cracked screen was missing from the car.  (Aug. 8, 2016 Tr. Vol. 1 at 88.)

{¶ 6} Officer James Watkins of the Columbus Division of Police testified that on October 18, 2015 he responded to a police dispatch of a robbery at 4828 Heaton Road. When he arrived on the scene, Officer Watkins said Moxley gave him a description of the suspect and said the suspect had fired a black revolver before fleeing. Officer Watkins also said that Moxley informed him immediately upon his arrival that he was a concealed carry permit holder and that he had his firearm on him, so Officer Watkins instructed Moxley not to reach for his firearm. Moxley told Officer Watkins he had fired his own weapon at the suspect. Once he had a description of the suspect, Officer Watkins "aired it" across the police radio channel and the other officers responding began patrolling the area looking for someone who matched the description. (Tr. Vol. 1 at 110.) A short time later, another officer, Officer Josh Wright, radioed to say he had a possible suspect. Officer Watkins and another officer drove Moxley and Corvi to the second location where both identified Brown as the man from the altercation. Officer Watkins testified that the reason he transported Moxley and Corvi separately was so that neither could influence the other in making the identification.

{¶ 7} Police arrested Brown and transported him to police headquarters for an interview, swabbing his hands as part of that process. When police apprehended Brown, they did not find a firearm on his person. Laboratory tests at the Ohio Bureau of Criminal Investigation found gunpowder residue present on Brown's hands.

{¶ 8} Detective Todd Cress of the Columbus Division of Police conducted the interview with Brown, and the state played a video recording of Detective Cress' interview with Brown at trial. During the interview, Brown initially denied being anywhere near Moxley's home. Brown then said the homeowner fired gunshots in his direction because he was near the property. Eventually, Brown admitted to being inside the vehicle, but he denied taking any property and denied being in possession of a firearm. However, when police arrested Brown, they found a cell phone with a cracked screen on his person that was the same cell phone Corvi had described as missing from the vehicle.

{¶ 9} As part of the investigation, Brown voluntarily submitted to a polygraph examination. Timothy Errington, a trooper with the Ohio State Highway Patrol, conducted the polygraph examination on the question "[d]id you point a gun at that man before he shot at you?" (Aug. 9, 2016 Tr. Vol. 2 at 265.) It was Trooper Errington's

conclusion that Brown was not being truthful when he stated he did not have a gun in his possession when he was inside Moxley's car.

{¶ 10} The parties stipulated to Brown's "prior conviction" in state's exhibit No. 76, which was a juvenile adjudication determining Brown to be a delinquent minor for having committed robbery. At the conclusion of the trial, the jury returned guilty verdicts on both the aggravated robbery charge with specification and the tampering with evidence charge with specification. The trial court found Brown guilty on the having a weapon while under disability charge.

{¶ 11} On August 24, 2016, prior to sentencing, Brown filed a motion for new trial claiming the state withheld material impeachment evidence. More specifically, Brown alleged in his motion that in June 2016, Moxley was convicted of receiving stolen property, a fifth-degree felony, and that the state failed to disclose Moxley's conviction to the defense. In a September 21, 2016 entry, the trial court denied Brown's motion for new trial, concluding the undisclosed evidence was not material to Brown's guilt and that impeaching Moxley's testimony with this evidence would not have created a reasonable probability of a different result.

{¶ 12} Following an October 6, 2016 sentencing hearing, the trial court sentenced Brown to three years on the aggravated robbery conviction plus three years on the accompanying firearm specification; nine months on the tampering with evidence conviction plus one year on the accompanying firearm specification; and nine months on the having a weapon while under disability conviction. The trial court ordered the sentences to run concurrently but noted the firearm specifications are mandatory and thus would be consecutive to the other sentences, resulting in an aggregate prison term of seven years. The trial court journalized Brown's convictions and sentence in an October 7, 2016 judgment entry. Brown timely appeals.

## II. Assignments of Error

{¶ 13} Brown assigns the following errors for our review:

> [1.] The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of aggravated robbery; tampering with evidence and having weapons under

> disability as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.
>
> [2.] The trial court committed plain error by failing to properly instruct the jury on the use of the polygraph examination.
>
> [3.] The trial court erred to the prejudice of appellant by denying his motion for a new trial.

## III.    First Assignment of Error – Sufficient Evidence and Manifest Weight of the Evidence

{¶ 14} In his first assignment of error, Brown argues his convictions are not supported by sufficient evidence and that the convictions are against the manifest weight of the evidence.  However, while the caption of his first assignment of error asserts all of his convictions are against both the sufficiency and manifest weight of the evidence, the body of his first assignment of error only presents an argument related to the sufficiency of the evidence with regard to the having a weapon while under disability conviction and an argument related to the manifest weight of the evidence with regard to the aggravated robbery and tampering with evidence convictions.  Thus, we limit our review to whether sufficient evidence supports Brown's conviction of having a weapon while under disability and whether the manifest weight of the evidence supports his convictions of aggravated robbery and tampering with evidence.  App.R. 12(A)(2) ("[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)"); *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 20 (10th Dist.).

### A. Sufficiency of the Evidence

{¶ 15} Whether there is legally sufficient evidence to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy.  *Id.*  The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a

reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 16} R.C. 2923.13(A)(2) provides, in relevant part, that "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."

{¶ 17} At trial, the parties stipulated to Brown's prior juvenile adjudication for second-degree felony robbery. Brown asserts this was the state's only evidence used to establish a legal disability that would prevent Brown from possessing a weapon. On appeal, Brown argues the Supreme Court of Ohio's recent decision in *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, prevents the trial court from using a juvenile adjudication as an element of the offense of having a weapon while under disability.

{¶ 18} In *Hand*, the Supreme Court determined it is a violation of due process to consider a juvenile adjudication as the equivalent of an adult conviction in order to enhance a penalty for a later crime. *Hand* at ¶ 37-38. In its decision, the Supreme Court determined R.C. 2901.08(A) is unconstitutional, which provided that a prior "adjudication as a delinquent child or as a juvenile traffic offender is a conviction for a violation of the law or ordinance for purposes of determining the offense with which the person should be charged and, if the person is convicted of or pleads guilty to an offense, the sentence to be imposed." *Id.* at ¶ 9. In so holding, the Supreme Court reasoned that because a juvenile adjudication, unlike an adult conviction, does not involve the right to a trial by jury, "a juvenile adjudication is not a conviction of a crime and should not be treated as one." *Id.* at ¶ 38. We note, however, that *Hand* did not address R.C. 2923.13, the having a weapon while under disability statute at issue in this case.

{¶ 19} Brown does not present his own constitutional challenge to R.C. 2923.13(A)(2). Contrary to the dissent's assertion that Brown presented a constitutional challenge to the statute, when read in context, Brown's reference to due process clearly relates to his challenge to the sufficiency of the evidence, an argument we address fully below. Brown does not raise a separate argument related to the facial or as applied

constitutionality of the having a weapon while under disability statute, a wholly distinct issue and one Brown should have raised in the trial court had he intended to argue it.[1] *State v. Golden*, 10th Dist. No. 13AP-927, 2014-Ohio-2148, ¶ 11 ("[f]ailure to raise the issue of the constitutionality of a statute or its application at the trial court level generally constitutes waiver of that issue and need not be heard for the first time on appeal").

{¶ 20} Instead of presenting his own constitutional challenge to R.C. 2923.13(A)(2), Brown argues the logic of *Hand* should extend to his case and prevent the court from considering his prior juvenile adjudication as part of his having a weapon while under disability conviction. We disagree.

{¶ 21} We note, as the state does, that while *Hand* considered R.C. 2901.08(A) and the use of a prior juvenile adjudication to increase the degree or penalty of an offense, R.C. 2923.13(A)(2), at issue here, treats a prior juvenile adjudication as an element of the offense. Looking at the language of the having a weapon while under disability statute, R.C. 2923.13(A)(2) presents alternative elements to establish the offense: either a prior juvenile adjudication *or* a prior conviction.[2] Thus, from the plain language of the statute, it cannot be said that R.C. 2923.13(A)(2) treats a prior juvenile adjudication as an adult conviction because it separately considers both juvenile adjudications and adult convictions. We conclude, therefore, that *Hand* does not apply to R.C. 2923.13(A)(2). Our resolution of this issue is in accordance with other appellate districts that have considered the issue. *See State v. Jackson*, 2d Dist. No. 27351, 2017-Ohio-4197 (concluding *Hand* does not apply to the use of a juvenile adjudication as an element of having a weapon while under disability); *State v. Boyer*, 2d Dist. No. 2016-CA-63, 2017-Ohio-4199 (noting the concerns the Supreme Court articulated in *Hand* do not apply because the indictment for having a weapon while under disability "relates strictly to choices [the defendant] has made since reaching the age of majority"); *State v. McCray*, 1st Dist. No. C-160272, 2017-

---

[1] Of course we agree with the dissent that Brown could not have argued at trial that *Hand* controlled because *Hand* did not yet exist. However, nothing prevented Brown from raising a constitutional challenge to R.C. 2923.13(A)(2) at trial and articulating why he believed the statute to be unconstitutional. Brown made no such argument.

[2] With regard to the dissent's emphasis that a prior juvenile adjudication is not determined by a jury trial, we note that R.C. 2923.13 presents five different bases for disability, and many of those bases are not determined by a jury, including being a fugitive from justice, being under indictment for a felony offense of violence, being under indictment for a drug offense, being drug dependent or in danger of drug dependence, being a chronic alcoholic, and being under adjudication of mental incompetence.

Ohio-2996 (declining to extend *Hand* to bar the use of a juvenile adjudication to prove the disability element of having a weapon while under disability); *State v. Stewart*, 8th Dist. No. 105154, 2017-Ohio-2993 (the narrow holding of *Hand* does not extend to R.C. 2923.13(A)(2)); *State v. Hudson*, 7th Dist. No. 15 MA 0134, 2017-Ohio-645 (finding no indication the Supreme Court would extend the holding in *Hand* to R.C. 2923.13(A)(2) and noting that many of the other statutory alternatives for establishing the disability element encompass facts that were not subjected to a prior jury trial).

{¶ 22} Because we find *Hand* distinguishable, Brown's argument related to the sufficiency of the evidence presented on his having a weapon while under disability charge fails.

### B. Manifest Weight of the Evidence

{¶ 23} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 24} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in

which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 25} Brown argues his convictions of aggravated robbery and tampering with evidence are against the manifest weight of the evidence because the witnesses' testimony was not credible, though he does not elaborate. However, it was within the province of the jury to believe Moxley's and Corvi's testimony. *State v. Connally*, 10th Dist. No. 16AP-53, 2016-Ohio-7573, ¶ 41. Moreover, to the extent Brown intends his credibility argument to extend to the concerns raised in his motion for new trial regarding Moxley's conviction for receiving stolen property, we note that even in light of that unrelated conviction, Moxley's testimony "was not so incredible as to render appellant's convictions against the manifest weight of the evidence." *State v. Berry*, 10th Dist. No. 10AP-1187, 2011-Ohio-6452, ¶ 18.

{¶ 26} Additionally, Brown notes his convictions were based largely on circumstantial evidence. However, "[a] lack of physical evidence, standing alone, does not render [a defendant's] conviction against the manifest weight of the evidence." *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 21, citing *State v. Conner*, 10th Dist. No. 12AP-698, 2013-Ohio-2773, ¶ 12. " 'If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other type of physical evidence does not render the conviction against the manifest weight of the evidence.' " *Peeples* at ¶ 21, quoting *State v. Jackson*, 7th Dist. No. 09 JE 13, 2009-Ohio-6407, ¶ 16 (concluding a conviction based on victim's testimony identifying the defendant was not against the manifest weight of the evidence despite the lack of physical evidence). Both Moxley and Corvi identified Brown as the person inside the vehicle who fired shots in Moxley's direction. Additionally, when police apprehended Brown, they found him in possession of Corvi's cell phone. Considering all the evidence, we cannot say the jury lost its way in believing Moxley's and Corvi's identifications of Brown as the gunman from the car. We also note there was some forensic evidence connecting Brown to the offenses, as the laboratory results revealed gunpowder residue was present on his hands.

{¶ 27} After an independent review of the record, we find the manifest weight of the evidence supports Brown's convictions of aggravated robbery and tampering with

evidence. Having already determined sufficient evidence supports Brown's conviction of having a weapon while under disability, we overrule Brown's first assignment of error.

## IV.  Second Assignment of Error – Jury Instructions

{¶ 28} In his second assignment of error, Brown argues the trial court erred in instructing the jury on the use of the polygraph test. More specifically, Brown asserts the trial court erred in failing to instruct the jury verbatim with the language provided in *State v. Souel*, 53 Ohio St.2d 123 (1978).

{¶ 29} Ordinarily, the trial court has discretion to decide to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an abuse of discretion. *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 127. Here, however, the parties agree that Brown did not object to the trial court's instruction on the polygraph test as being at odds with *Souel*, and instead his counsel specifically agreed to the instruction as given. Thus, Brown has waived all but plain error. *Id.* at ¶ 99, citing *State v. Cook*, 65 Ohio St.3d 516, 527 (1992). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *Pilgrim* at ¶ 58, citing *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68. For an error to be "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 30} At the conclusion of evidence, the trial court instructed the jury regarding the polygraph test by stating:

> The results of the polygraph examination have been admitted into evidence. The results obtained from the polygraph examination are not - - are not admitted to prove or disprove any element of the crime with which the Defendant is charged. Rather, the testimony is admitted to indicate at the time of the examination the Defendant was not telling the truth. You may consider the testimony for the purpose of testing the credibility of the Defendant.

(Aug. 10, 2016 Tr. Vol. 3 at 401.)   Brown argues the trial court instead should have instructed the jury pursuant to *Souel*, which provides:

> [T]he trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given.

(Internal quotations omitted.) *Souel* at 132.

{¶ 31} Brown asserts the instruction given by the trial court amounts to plain error because it changes the purpose and use of the polygraph evidence from what the Supreme Court stated in *Souel*. However, this court has previously approved the use of the instruction as given by the trial court. *State v. Russell*, 10th Dist. No. 03AP-666, 2004-Ohio-2501, ¶ 48 (reciting the identical instruction and stating "the trial court did * * * give the correct instruction regarding the polygraph evidence"). Additionally, we do not agree with Brown that the instruction goes beyond the instruction provided in *Souel*. *See State v. Reese*, 7th Dist. No. 14 MA 116, 2016-Ohio-557, ¶ 20 (finding the instruction "correct" and noting "[t]he instruction is a correct statement of the law set out in *Souel* that polygraph evidence may be used for corroboration or impeachment, in other words to test credibility, as long as certain conditions are met"). For these reasons, the instruction the trial court provided was not error, and Brown cannot satisfy even the first prong of the plain error test.

{¶ 32} Because the trial court did not err in instructing the jury regarding the polygraph examination, we overrule Brown's second assignment of error.

## V. Third Assignment of Error – Motion for New Trial

{¶ 33} In his third and final assignment of error, Brown argues the trial court erred in denying his motion for new trial. Though Brown filed his motion in the trial court presenting an argument pursuant to Crim.R. 33, the trial court analyzed his motion pursuant to R.C. 2945.79. In the interest of thoroughness, we address both grounds.

### A. Crim.R. 33(A)(6)

{¶ 34} The decision of whether to grant a motion for new trial pursuant to Crim.R. 33 rests within the sound discretion of the trial court. *State v. Schiebel*, 55 Ohio St.3d 71 (1990), paragraph one of the syllabus. An appellate court reviews a trial court's

determination of a Crim.R. 33 motion for an abuse of discretion. *Id.*; *State v. Townsend*, 10th Dist. No. 08AP-371, 2008-Ohio-6518, ¶ 8. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 35} A trial court may grant a new trial under Crim.R. 33(A)(6) "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." The language of Crim.R. 33 makes it clear that a trial court should not grant a new trial " 'unless it affirmatively appears from the record that a defendant was prejudiced by one of the grounds stated in the rule, or was thereby prevented from having a fair trial.' " *Salinas* at ¶ 41, quoting *Columbus v. Carrroll*, 10th Dist. No. 96APC01-90 (Aug. 27, 1996), citing Crim.R. 33(E).

{¶ 36} In order to warrant the granting of a motion for new trial in a criminal case based on newly discovered evidence, the defendant must show that the new evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505 (1947), syllabus. *See also State v. Lee*, 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶ 9.

{¶ 37} Brown moved for a new trial on the basis of newly discovered evidence, alleging he had discovered material impeachment evidence that Moxley had a conviction for receiving stolen property and the state did not disclose Moxley's conviction prior to trial. In its decision denying Brown's motion for new trial, the trial court noted that Moxley was convicted in Delaware County in late June 2016, several weeks before he testified in Brown's criminal case, of fifth-degree felony receiving stolen property. Neither the state nor Brown knew of Moxley's conviction until after the jury returned its verdict in Brown's trial.

{¶ 38} The state responded to Brown's motion for new trial by relaying a conversation prosecutors had with defense counsel in which the state admitted it had not yet run a records check for Moxley and informally asked Corvi whether she knew of any criminal record Moxley may have. When Corvi said Moxley did not have a criminal

record, the state offered to run a records check on both Corvi and Moxley but defense counsel stated such action would not be necessary.

{¶ 39} The state asserts the trial court did not abuse its discretion because Brown fails to demonstrate the evidence of Moxley's criminal record is something that could not have been discovered prior to trial with the exercise of reasonable diligence. We agree. The state gave Brown the option of running a complete records check and Brown declined. Moreover, though we agree with Brown that the state was in error by not running the records check in the first instance pursuant to Brown's discovery request, we nonetheless find the trial court did not abuse its discretion in denying Brown's motion for new trial because the evidence of Moxley's criminal record would not disclose a strong probability that the outcome will change. There was ample evidence at trial that Brown committed the offenses. He admitted to police that he was inside the vehicle, he had Corvi's cell phone on his person when he was apprehended, and the results of his polygraph examination undermined his denial to police that he did not possess or use a firearm during the altercation. Thus, Brown is unable to satisfy the six-factor test for a new trial pursuant to Crim.R. 33(A)(6).

### B. R.C. 2945.79 and *Brady v. Maryland*

{¶ 40} Though Brown purportedly filed his motion for new trial pursuant to Crim.R. 33(A)(6), it is unclear whether he also presented an argument for a new trial based on R.C. 2945.79 and *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, even if we were to construe his motion as implicating *Brady*, we still conclude the trial court did not abuse its discretion in denying Brown's motion for new trial.

{¶ 41} R.C. 2945.79 provides that a trial court may grant a new trial on the application of the defendant for, among other reasons, "[m]isconduct of the jury, prosecuting attorney, or the witnesses for the state" when such misconduct materially affects the defendant's substantial rights. R.C. 2945.79(B).

{¶ 42} In *Brady*, the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* at 87. Thus, Brady places on the prosecution a duty to disclose evidence material to guilt or punishment. *Id.* The duty to disclose

encompasses both impeachment evidence and exculpatory evidence, including evidence known only to police investigators and not to the prosecution. *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). To establish a *Brady* violation, the defendant must demonstrate the prosecution failed to disclose evidence that not only is favorable to the defense, but is also material. *See State v. Crawford*, 10th Dist. No. 08AP-1055, 2009-Ohio-4649, ¶ 23.

{¶ 43} Evidence is "material" only if a "reasonable probability" exists that the result of the proceeding would have been different had the prosecution disclosed the evidence to the defense. *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

{¶ 44} Here, we agree with the trial court that the evidence related to Moxley's criminal record is not material to either Brown's guilt or punishment. Additionally, given the number of witnesses besides Moxley who testified regarding their firsthand accounts of Brown at or near the scene, the gunshot residue on Brown's hands, and Brown's polygraph test results, we agree with the trial court that impeaching Moxley's testimony with his fifth-degree felony receiving stolen property conviction does not create a reasonable probability of a different result at trial. Even in the absence of the timely disclosure of the evidence related to Moxley's criminal record, we find Brown received a fair trial and that the verdict is worthy of confidence. For these reasons, the trial court did not abuse its discretion in denying Brown's motion for new trial pursuant to R.C. 2945.79.

{¶ 45} Because we conclude the trial court did not abuse its discretion in denying Brown's motion for new trial under both Crim.R. 33 and R.C. 2945.79, we overrule Brown's third and final assignment of error.

## VI. Disposition

{¶ 46} Based on the foregoing reasons, the sufficiency and manifest weight of the evidence support Brown's convictions, the trial court did not plainly err in instructing the jury regarding the polygraph test, and the trial court did not abuse its discretion in

denying Brown's motion for new trial.  Having overruled Brown's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN J., concurs.
HORTON, J., concurs in part and dissents in part.

HORTON, J., concurring in part and dissenting in part.

{¶ 47} I respectfully dissent in part from the decision to overrule Brown's first assignment of error regarding his conviction under R.C. 2923.13(A)(2) for having a weapon while under disability.  As an initial matter, I am at a complete loss to see the grounds for the majority's assertion that Brown has failed to "present his own constitutional challenge" to R.C. 2923.13(A)(2) when, in his assignment of error and statement of the issues, he expressly stated that his conviction under that statute was a violation of due process and, in his argument, cited *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, as controlling precedent.  (Majority Decision at ¶ 19; Appellant's Brief at vi & 3-4.)  *See* App.R. 16(A)(4) and (7) (requiring an appellant to present a statement of "the issues presented for review" and an argument with "the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities * * * on which appellant relies").

{¶ 48} The majority also asserts that Brown's due process challenge to the legal sufficiency of the evidence supporting his conviction under R.C. 2923.13(A)(2) is "wholly distinct" from the issue of whether that statute was constitutionally applied to him, dismissing the issue as waived.  (Majority Decision at ¶ 19.)  There is no distinction.  R.C. 2923.13(A)(2) was applied to Brown by convicting him under it, and "a conviction based on legally insufficient evidence constitutes a denial of due process." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), citing *Tibbs v. Florida*, 457 U.S. 31, 45 (1982).  "A claim raising the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 219, citing *Thompkins* at 386.  As explained more fully below, the fact of Brown's prior juvenile adjudication was the evidence that the state used to prove an element of the offense of having a weapon while under disability under R.C. 2923.13(A)(2).  The statute was unconstitutionally

applied to Brown when he was convicted under it based on legally insufficient evidence. Thus, there is no "separate argument" to be made that the statute was unconstitutionally applied that Brown has failed to raise or waived. (Majority Decision at ¶ 19).

{¶ 49} Even if there were a "separate" as applied challenge to his conviction under R.C. 2923.13(A)(2), the majority errs when it asserts that Brown waived it. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus. The Supreme Court of Ohio decided *Hand*, the controlling authority on which Brown's challenge relies, on August 25, 2016, two weeks after the conclusion of Brown's trial August 11, 2016. Thus, the issue was not apparent at the time of trial and could not have been raised at that time.

{¶ 50} In short, if citing to a case with an analysis grounded in long-established precedent of the United States Supreme Court and a holding based entirely on fundamental principles of due process does not present a constitutional challenge, I am not sure what does. My analysis begins with a review of those principles.

{¶ 51} The Fifth Amendment of the United States Constitution recognizes that a defendant must not be deprived of liberty "without due process of law," and the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." The United States Supreme Court has long recognized that "these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995).

{¶ 52} This foundational principle—that every element of a crime must be proved beyond a reasonable doubt—also applies to facts that, if proved, increase the penalties a defendant faces. This is because "a fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed." *Alleyne v. United States*, ___U.S.___, 133 S.Ct. 2151, 2158 (2013). Thus, in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

proved beyond a reasonable doubt."   In *Alleyne*, the court recognized that this requirement also applies to facts that increase a statutorily prescribed mandatory minimum sentence.  *Alleyne* at 2158.

{¶ 53} As *Apprendi* made clear, the one exception is "the fact of a prior conviction," which need not be submitted to a jury.  *Id.* at 490.  The Supreme Court of Ohio explained this exception in *Hand* at ¶ 31:

> But prior convictions are treated differently only because 'unlike virtually any other consideration used to enlarge the possible penalty for an offense, * * * a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.' *Jones v. United States*, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Thus, at the heart of *Apprendi*'s narrow exception is *the concept that the prior conviction was the result of a proceeding in which the defendant had the right to a jury trial* and the right to require the prosecutor to prove guilt beyond a reasonable doubt.

(Emphasis added.)

{¶ 54} Because, however, the Sixth Amendment right to a jury trial is absent from juvenile adjudications, *Hand* determined that such adjudications could not be included in *Apprendi's* exception for actual convictions:

> Given the United States Supreme Court's emphatic pronouncements on the importance of the right to a jury trial, it is logical to conclude that the court meant to limit the prior-conviction exception to prior proceedings that satisfied the jury-trial guarantee. Because a juvenile adjudication is not established through a procedure that provides the right to a jury trial, it cannot be used to increase a sentence beyond a statutory maximum or mandatory minimum.

*Hand* at ¶ 34.  The court further reasoned:

> The right to a jury trial is fundamental to due process just as the right to counsel is fundamental. But in juvenile proceedings, there is no right to a jury because the focus is on rehabilitation rather than punishment. To convert an adjudication into a conviction when the adjudication process did not provide the right to have a jury test the elements of that offense offends due process and *Apprendi* and thus the

> state cannot treat a prior juvenile adjudication as a prior
> conviction to enhance the penalty for a subsequent conviction.

*Id.* at ¶ 36.

{¶ 55} Applying these principles, the Supreme Court of Ohio held that R.C. 2901.08(A), a statute that treated a juvenile adjudication as a conviction for purposes of determining the offense level and sentencing, violated the Due Process Clauses of the United States Constitution and the Ohio Constitution. *Id.* at ¶ 37.

{¶ 56} In this case, Brown was convicted of having a weapon while under disability under R.C. 2923.13. The statute states that "no person shall knowingly acquire, have, carry, or use any firearm" in a number of circumstances. R.C. 2923.13(A). Relevant here is the prohibition on carrying a firearm if a defendant "has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." R.C. 2923.13(A)(2). The statute treats a defendant's previous conviction for a violent offense, or a delinquency adjudication of what would have been a violent offense if committed by an adult, as two alternatives to prove the same element of the offense. However, only the first alternative—actual conviction—results from a constitutionally sound process that affords a defendant all the rights to which he is entitled under the Fifth and Sixth Amendments. *See Hand* at ¶ 31. Thus, Brown's conviction under the other element, which requires only a delinquency adjudication resulting from a process that did not include the right to a jury trial, violated his right to due process. In the juvenile court, no "jury test[ed] the elements of that offense," and, under *Hand*, it cannot be treated as a prior conviction to support an offense. *Id.* at ¶ 36.

{¶ 57} The majority asserts that *Hand* does not control because the statute it invalidated, R.C. 2901.08(A), uses the fact of a defendant's juvenile adjudication to increase an offense level or penalty, while "R.C. 2923.13(A)(2), at issue here, treats a prior juvenile adjudication as an element of the offense." (Majority Decision at ¶ 21.)

{¶ 58} But this is precisely the point. Constitutionally, there is no distinction between facts that enhance punishment and the facts that prove an element of the crime. The United States Supreme Court stated this unequivocally in *Alleyne* when explaining *Apprendi*: "In *Apprendi*, we held that a fact is by definition an element of the offense and

must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed."  *Alleyne* at 2158. *Apprendi* as well states that "facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense."  *Id.* at 483, fn. 10.  The equivalency is sound, as it merely emphasizes the foundational principle that every element of a crime must be proven to a jury beyond a reasonable doubt.  *Gaudin* at 510.  It is this principle that served as the basis for the holding in *Apprendi*, and, by extension, *Hand.*

{¶ 59} Because every element must be proven to a jury beyond a reasonable doubt, the burden on the state to convict a defendant for robbery is not equivalent to, and is much heavier than, what it must prove to secure an adjudication of delinquency against a minor.  R.C. 2901.08, the statute invalidated in *Hand*, and R.C. 2923.13(A)(2), the weapons while under disability statute, both equate convictions and delinquency adjudications.  In both statutes, they are interchangeable means of achieving each statute's end: for R.C. 2901.08, increasing an offense level or penalty; and, for R.C. 2923.13(A)(2), defining an element of the offense.  Thus, the majority is incorrect when it asserts that "it cannot be said that R.C. 2923.13(A)(2) treats a prior juvenile adjudication as an adult conviction because it separately considers both juvenile adjudications and adult convictions."  (Majority Decision at ¶ 21.)  The opposite is true.  The statute equates one with the other, as either one proves the same element of the offense.  This equivalency is what *Hand* held violated principles of due process because only one of the alternatives—a conviction—is subject to the Sixth Amendment right to a jury trial. *Hand* at ¶ 36-37.  And, although the statute provides various alternatives for proving the offense, "[i]n all other scenarios, the status of disability is conduct which occurs as an adult.  The juvenile vs. adult conduct distinction is critical to the constitutional analysis, particularly under the Ohio Constitution as noted in *Hand*."  *State v. Boyer*, 2d Dist. No. 2016-CA-63, 2017-Ohio-4199, ¶ 18 (J. Donovan, dissenting.)  Rather than engaging with the constitutional issues raised by Brown's appeal, the majority ducks the issue by performing a limited exercise in statutory interpretation that, in essence, concludes that *Hand* does not control because it involved a different statute.  Simply put, *Hand* has rendered R.C. 2923.13(A)(2) unconstitutional with respect to the use of juvenile adjudications.

{¶ 60} While I concur with the majority in part, I respectfully dissent from its decision to overrule the first assignment of error in its entirety.  For the foregoing reasons, I would overrule it in part, as Brown's prior juvenile adjudication is legally insufficient to prove an element of the offense of having a weapon while under disability under R.C. 2923.13(A)(2).

_____