OPINION
{¶ 1} Appellee-Appellant, the Planning and Zoning Commission of the city of Dublin ("commission"), appeals from a judgment of the Franklin County Municipal Court that reversed the commission's decision to deny the application of appellants-appellees, Athenry Shoppers Limited and Stephen Andrews, for approval of an amended final development plan for the construction of a commercial building with associated site *Page 2 
improvements. Because the trial court did not apply the correct legal standard for reviewing a commission decision, we reverse.
 {¶ 2} In the spring of 2007, appellees submitted an application to the commission to amend their final development plan for an existing shopping center located on Muirfield Drive in the Indian Run Meadows plan district of Dublin, Ohio. Appellees requested that the commission approve the construction of a 2,400-square-foot building on an out parcel of the property. Pursuant to the procedures prescribed in Section 153.053(E)(2)(a) of the Dublin City Code, the staff of the commission reviewed appellees' application and prepared a report. The staff report recommended approval of the application.
 {¶ 3} On June 7, 2007, the commission held a hearing on appellees' application. Several members of the commission's staff testified that the proposed development complied with the zoning code criteria and the existing development standards within the planned district. The staff recommended approval of the application with two conditions, both of which appellees agreed to.
 {¶ 4} Bill Andrews testified on behalf of appellees. In addition to agreeing to the two conditions recommended by staff, Andrews also agreed to install security gates to limit vehicle access to the rear of the shopping center after 7:00 p.m. Andrews believed that the security gates would alleviate complaints that neighbors had expressed about late-night and early-morning noise.
 {¶ 5} Farid Masri then testified in opposition to the application. Masri is a neighbor who lives right behind the shopping center. Masri expressed concerns regarding: (1) the appearance of rooftop mechanicals on the proposed building; (2) the possibility that the proposed building would increase the intensity of use of the center, *Page 3 
which would increase traffic and the danger to bicyclists and pedestrians, thereby adversely affecting the neighborhood; (3) the number of grievances neighbors have had with the shopping center, including noise from late-night deliveries and other vehicles behind the center at night; and (4) inadequate landscape maintenance on portions of the property.
 {¶ 6} Reacting to this testimony, the commission members expressed a variety of concerns with appellees' application, including the proximity of the proposed building to the access road, increased traffic and threats to pedestrian safety, and the adequacy of parking for more intense use of the shopping center. However, at appellees' request, rather than entertaining a motion to approve or disapprove the application, the commission tabled the application to allow appellees an opportunity to address the concerns raised by commission members.
 {¶ 7} The commission held a second hearing on October 11, 2007 to consider appellees' revised proposal to amend the final development plan. Three witnesses testified at this hearing. Abby Scott, a commission staff member, testified that appellees made several changes to their proposal. She stated that appellees reduced the size of the building to allow for a greater set back from the internal drive and also relocated the dumpster to comply with the development text. Appellees also installed vehicle-barrier gates to limit vehicle access to the area behind the shopping center to address the neighbors' complaints about noise. Appellees added a sidewalk connection from the proposed building to the public way and relocated the entrance from the east side to the north side of the building. Appellees also submitted a revised landscape plan that met with code requirements. Scott opined that appellees' revised proposal complied with the *Page 4 
amended final development plan criteria set forth in the zoning code and the existing development standards within the planned district. Therefore, she recommended approval of appellees' revised proposal.
 {¶ 8} Masri again testified in opposition to appellees' revised proposal. He stated that appellees had not demonstrated a sincere effort to address the neighbors' longstanding problems with the shopping center. According to Masri, what improvements appellees had made were only accomplished within the two weeks preceding the hearing, even though these problems had existed for a long time. Masri also expressed great concern regarding the increased intensity of use that would result if appellees' application were approved. Masri was worried that increased intensity of use would exacerbate existing problems with excess traffic, inadequate parking, and objectionable noise and smell from the shopping center. Masri also noted that the staff's parking study did not address parking needs at the shopping center after 4:00 p.m., which is the time period when parking is the biggest problem. Lastly, Masri stated that vehicle gates at the rear of the shopping center would not stop tenants and their employees from parking behind the center during the day, in close proximity to the neighbors' homes. These tenants and employees would continue to make objectionable noise when they left the shopping center late at night.
 {¶ 9} Andrews disputed Masri's contention that there was insufficient parking at the shopping center. He also stated that the gates limiting vehicle access to the back of the shopping center after 7:00 p.m. should substantially alleviate the neighbors' complaints about late-night and early-morning deliveries and noise. Lastly, Andrews stated that the revised proposal would not negatively impact vehicle or pedestrian safety *Page 5 
at the center, which in his opinion had not been a problem. He applauded the staff's work and requested that the commission approve appellees' revised proposal.
 {¶ 10} Following this testimony, commission members expressed their individual concerns regarding appellees' revised proposal. In summary, commission members felt that approval of appellees' revised proposal would increase the intensity of use of the shopping center and thereby negatively impact vehicular, bicycle, and pedestrian safety. The increased intensity of use would also negatively impact parking, particularly during evening hours. Therefore, the commission voted unanimously to deny appellees' revised proposal.
 {¶ 11} Appellees appealed the commission's decision to the Franklin County Municipal Court pursuant to R.C. 1901.183(I) and 2506.01. Based solely upon the record before the commission, the trial court found that the commission's denial was not factually supported and was not objectively based. Therefore, the trial court reversed the commission's decision and ordered the commission to approve appellees' amended final development plan.
 {¶ 12} The commission now appeals and assigns the following errors:
 [1.] The Municipal Court abused its discretion by not affording deference to the Commission's resolution of the evidence, and by substituting its judgment for that of the Commission.
 [2.] The Municipal Court abused its discretion in failing to sufficiently place the burden on Appellee to prove that the decision of the Commission was erroneous.
 [3.] The Municipal Court abused its discretion by conducting a de novo review of the Application.
 [4.] The Municipal Court erred as a matter of law in its application O.R.C. § 2506.04, as it failed to correctly apply the preponderance of the evidence standard. *Page 6 
 {¶ 13} Because the commission's assignments of error are closely related, we will address them jointly.
 {¶ 14} R.C. 1901.183(I) grants jurisdiction to the environmental division of a municipal court to hear appeals from "any final order of any * * * commission * * * that relates to a local building, * * * zoning * * * ordinance, or regulation, in the same manner and to the same extent as in similar appeals in the court of common pleas." In turn, R.C. 2506.01(A) provides that "every final order * * * or decision of any * * * commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located * * * ."
 {¶ 15} Here, the trial court reviewed the commission's decision pursuant to R.C. Chapter 2506. R.C. 2506.04 sets for the standard of review for appeals taken pursuant to R.C. 2506.01. It provides:
 If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.
 {¶ 16} Although a review under R.C. 2506.04 is not de novo, it often resembles a de novo proceeding because the reviewing court weighs the evidence in the "whole *Page 7 
record" in determining whether the administrative decision is supported by the preponderance of substantial, reliable, and probative evidence.Dudukovich v. Lorain Metro. Housing Auth. (1979), 58 Ohio St.2d 202,206-07. Analogizing the R.C. 2506.04 review standard to the standard set forth in R.C. 119.12, the Dudukovich court noted that "`the Court of Common Pleas * * * must give consideration to the entire record * * * and must Appraise all such evidence as to the credibility of [the] witnesses, the probative character of the evidence and the Weight to be given it * * *.'" Id., at 207, quoting Andrews v. Bd. of LiquorControl (1955), 164 Ohio St. 275, paragraph one of the syllabus. Therefore, the reviewing court must weigh the evidence in the record to determine whether there exists a preponderance of reliable, probative, and substantial evidence to support the agency decision. Id. However, the Dudukovich court noted:
 We caution, however, to add that this does not mean that the court may blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise. The key term is "preponderance." If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand.
Id. at 207.
 {¶ 17} We have characterized the R.C. 2506.04 standard as a hybrid form of review due to the balance the reviewing court must maintain.Elbert v. Bexley Planning Comm. (1995), 108 Ohio App.3d 59, 66. The reviewing court must weigh the evidence to determine whether the administrative decision is supported by the preponderance of substantial, reliable, and probative evidence, but still give due deference to the administrative agency's resolution of evidentiary conflicts and not blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise. Id. *Page 8 
 {¶ 18} Courts of appeal apply a more limited standard of review in an R.C. 2506.04 appeal. Henley v. Youngstown Bd. of Zoning Appeals,90 Ohio St.3d 142, 147, 2000-Ohio-493, citing Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34. R.C. 2506.04 grants courts of appeal the power to review the judgment of a lower court only on questions of law. Courts of appeal do not have the same extensive power to weigh the preponderance of substantial, reliable, and probative evidence as is granted to the lower courts. Id.
 {¶ 19} Here, the essence of the commission's four assignments of error is that the trial court erred by substituting its judgment for that of the commission and by failing to apply the R.C. 2506.04 standard of review. We agree.
 {¶ 20} Section 153.055(B) of the Dublin City Code sets forth the criteria for the commission to review a proposed final development plan. This section provides:
 (B) Final development plan. In the review of proposed planned developments, the Planning and Zoning Commission shall determine whether or not the proposed development, as depicted on the final development plan, complies with the following:
 (1) The plan conforms in all pertinent respects to the approved preliminary development plan provided however, that the Planning and Zoning Commission may authorize plans as specified in § 153.053(E)(4);
 (2) Adequate provision is made for safe and efficient pedestrian and vehicular circulation within the site and to adjacent property;
 (3) The development has adequate public services and open spaces;
 (4) The development preserves and is sensitive to the natural characteristics of the site in a manner that complies with the applicable regulations set forth in this code; *Page 9 
 (5) The development provides adequate lighting for safe and convenient use of the streets, walkways, driveways, and parking areas without unnecessarily spilling or emitting light onto adjacent properties or the general vicinity;
 (6) The proposed signs, as indicated on the submitted sign plan, will be coordinated within the PUD and with adjacent development; are of an appropriate size, scale, and design in relationship with the principal building, site, and surroundings; and are located so as to maintain safe and orderly pedestrian and vehicular circulation;
 (7) The landscape plan will adequately enhance the principal building and site; maintain existing trees to the extent possible; buffer adjacent incompatible uses; break up large expanses of pavement with natural material; and provide appropriate plant materials for the buildings, site, and climate;
 (8) Adequate provision is made for storm drainage within and through the site which complies with the applicable regulations in this code and any other design criteria established by the city or any other governmental entity which may have jurisdiction over such matters;
 (9) If the project is to be carried out in progressive stages, each stage shall be so planned that the foregoing conditions are complied with at the completion of each stage;
 (10) The Commission believes the project to be in compliance with all other local, state and federal laws and regulations.
 {¶ 21} In the case at bar, the commission denied appellees' revised proposal because it found that appellees failed to comply with the Dublin City Code Section 153.055(B) criteria. On appeal of that decision, the trial court was required to examine the "whole record" to determine whether there was a preponderance of reliable, probative, and substantial evidence to support the commission's denial of the revised proposal based on the Dublin City Code Section 153.055(B) criteria. R.C. 2506.04. *Page 10 
 {¶ 22} Although the trial court expressly identified the R.C. 2506.04
standard of review, the trial court did not consider all the evidence in the record in determining that the preponderance of reliable, probative, and substantial evidence did not support the commission's decision. Most notably, the trial court did not consider the majority of Masri's testimony in weighing the preponderance of the evidence.
 {¶ 23} The record reflects that Masri was the only witness who testified in opposition to appellees' amended final development plan. Masri testified that he opposed appellees' application primarily because: (1) appellees' past conduct indicated their lack of good faith in complying with all aspects of the existing development plan; (2) approval of the revised proposal would increase the intensity of use of the shopping center and thereby exacerbate problems associated with vehicular traffic, bicycle and pedestrian safety, inadequate parking during evening hours, and objectionable noise and odors from the center; and (3) vehicle barrier gates behind the center would not eliminate problems caused by tenants and employees parking near neighbors' homes. Masri's testimony during the two hearings related to at least subsections (2), (4), and (7) of Section 153.055(B) of the Dublin City Code. His testimony was the only evidence that the commission could have relied on in denying appellees' application.
 {¶ 24} However, the trial court's only reference to Masri's testimony is as follows:
 According to the testimony of Farid Masri at the June 7, 2007 proceeding, the owner has met with the residents and has "brought up" the landscaping maintenance standard and thus, addressed this concern.
The trial court made no attempt to weigh the majority of Masri's testimony against the evidence supporting appellees' application. The trial court did not indicate whether or not it found Masri's testimony credible. In fact, the trial court stated that the commission's *Page 11 
denial of appellees' revised proposal was "not factually supported," which suggests that the trial court largely ignored Masri's testimony. Rather than weighing all the evidence in the record to determine whether the commission's decision was supported by a preponderance of substantial, reliable, and probative evidence, the trial court simply focused on evidence that it found persuasive and effectively substituted its judgment for that of the commission.
 {¶ 25} To the extent that the trial court addressed the grounds for the commission's denial, it rejected those grounds as not "objectively based." It appears the trial court was referring to concerns raised by individual commission members during the hearings. Although the trial court could have rejected the reasons cited by the commission if the preponderance of substantial, reliable, and probative evidence did not support the denial, it had to weigh all the evidence in the record in making that determination. Here, the trial court could not have weighed all the evidence in the record without considering the entirety of Masri's testimony.
 {¶ 26} Because the trial court failed to apply the R.C. 2506.04
standard of review, it erred as a matter of law. Therefore, we sustain the commission's four assignments of error and we reverse the judgment of the Franklin County Municipal Court and remand this matter to the trial court to review the entire record of the administrative proceedings under the standard of review set forth in R.C. 2506.04.
Judgment reversed and cause remanded with instructions.
BRYANT and SADLER, JJ., concur. *Page 1