[Cite as *Lamb v. Reynoldsburg Civ. Serv. Comm.*, 2021-Ohio-2322.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Larry Lamb, | : | |
| Appellant-Appellant, | : | |
| | : | No. 19AP-864 |
| v. | : | (C.P.C. No. 18CV-5356) |
| City of Reynoldsburg | : | (REGULAR CALENDAR) |
| Civil Service Commission | | |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on July 8, 2021

**On brief:** *Larry Lamb*, pro se. **Argued:** *Larry Lamb*.

**On brief:** *Fishel Downey Albrecht & Riepenhoff LLP*, *Marc A. Fishel* and *Daniel A. Sabol*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Appellant, Larry Lamb, pro se, appeals a judgment of the Franklin County Court of Common Pleas affirming the order of the Reynoldsburg Civil Service Commission ("Commission") that affirmed the termination of Lamb's employment with the Reynoldsburg City School District ("school district"). For the following reasons, we affirm the common pleas court's judgment.

{¶ 2} Lamb was employed by the school district as a maintenance worker for approximately ten years prior to the events giving rise to his termination. On December 7, 2017, Lamb's assigned hours were 7:00 a.m. to 3:30 p.m. At approximately 1:30 p.m., Lamb and fellow maintenance employee, Robert Moore, were assigned a task by their

supervisor, Charles Pickett, the school district's facilities and support services manager. At approximately 2:30 p.m., Lamb determined that it would be difficult to complete the task by 3:30 p.m. and urged Moore to so advise Pickett and obtain approval to work overtime. Moore called Pickett, who responded that there was still an hour left in the workday and that he and Lamb should continue working.

{¶ 3} The next morning, December 8, 2017, Pickett held his daily facilities department meeting. Lamb informed Pickett that he and Moore had worked 15 minutes overtime the previous day and wanted to be compensated for it. Pickett stated that he would neither authorize compensatory time nor compensate them monetarily because he had not authorized the overtime. Lamb was "infuriated" and told Pickett "it was fucking bullshit." (Apr. 25, 2018 Tr. at 17.) In addition, Lamb was upset because he thought Moore had failed to advise Pickett about the overtime issue. Moore, standing near the table where Lamb was seated, pointed at Pickett and said "Look, Chuck. I don't want to be part of this. It's 15 minutes. It's not a big deal." *Id.* at 18. Lamb called Moore "a fucking pussy," told him to "grow some fucking balls," and smacked Moore's hand away. *Id.* at 18, 36. Moore started to walk away, but returned to where Lamb was seated, pointed his finger at him, and said "[d]on't talk to me like that and don't touch me." *Id.* at 18. Lamb again smacked Moore's hand and said he would "beat his fucking ass" or "knock [him] the fuck out." *Id.* at 18, 38, 44, 51. Pickett separated the men because he was worried the situation might escalate. Lamb used profanity as he continued to voice his displeasure with both Moore and Pickett.

{¶ 4} Pickett reported the incident to Chris Reed, the school district's director of operations and services. Pickett and Reed reviewed surveillance footage captured on two security cameras situated inside the room where the meeting was held. Jennifer Kelley, a human resources consultant for the school district, also reviewed the security footage. Following consultation with Reed, Kelley recommended that Lamb be placed on paid administrative leave pending further investigation.

{¶ 5} Pursuant to her investigation, Kelley interviewed Lamb on December 11, 2017. Lamb claimed that he felt threatened by Moore pointing at him and swatted Moore's hand away in a defensive reflex action. Lamb told Kelley he did not use profanity during the incident.

{¶ 6}   A pre-disciplinary hearing was held on January 11, 2018. Lamb reiterated that Moore pointing at him caused him to push Moore's hand out of the way.  However, he admitted that he used profanity during the incident.   Following the hearing, Reed recommended termination of Lamb's employment.

{¶ 7}   In a resolution dated February 20, 2018, the Reynoldsburg Board of Education ("board") terminated Lamb's employment with the school district.  The board set forth the following reasons for the termination:

> [O]n or about Friday, December 8, 2017, while at work, Mr. Lamb physically struck and verbally threatened a co-worker, and
>
> [D]uring the incident on December 8, 2017, Mr. Lamb called his co-worker vulgar and demeaning names, and
>
> [D]uring the course of the investigation into the foregoing allegations, Mr. Lamb was dishonest about his actions on December 8, 2017, when he denied using any profanity during the incident with his co-worker, but several days later admitted using profanity toward his co-worker[.]

{¶ 8}   Lamb appealed his termination to the Commission. At a hearing held on April 25, 2018, Pickett, Moore, Kelley, and Reed testified on behalf of the school district as to the above-noted facts.  Lamb and Robert Kocher, the school district's head custodian and union president, testified on behalf of Lamb.

{¶ 9}   Lamb testified that Moore told him that Pickett had authorized overtime compensation for any work performed after 3:30 p.m.  He further testified that had Pickett not done so, he would have abandoned the task at 3:30 p.m. regardless of whether it was completed.  Lamb further averred that after completing the assignment, he told Moore that he would raise the issue of overtime at the morning meeting.

{¶ 10}  At that meeting, Lamb told Pickett that he and Moore would take 23 minutes of compensatory time (equal to time and a half) and leave early that day in lieu of being paid overtime.  When Pickett did not agree to this arrangement, Lamb became "upset" and began arguing with Pickett.  *Id.* at 101.  Lamb then demanded that Moore admit he had told Lamb that Pickett had authorized the overtime.  Moore pointed his finger at Pickett and stated that even though Pickett had insisted that the task be completed that day, he refused to authorize overtime.  Interpreting Moore's statement as "throwing [him] under

the bus," Lamb swatted at Moore's hand and told him to "get behind me. I'll argue for us." *Id.* at 103, 114. Moore came within three inches of Lamb's face and pointed his finger at him. Lamb perceived Moore's action as "threatening" and, reacting "spontaneously, in an autonomic [sic], nervous system reflex action," told Moore to "get out of my face." *Id.* at 103, 104. According to Lamb, he did not use profanity in his interactions with Moore or Pickett. Pickett ordered Lamb and Moore to opposite sides of the room. Although he was still upset, he complied with Pickett's directive.

{¶ 11} Pickett eventually told Lamb to begin his work assignments. Later that day, Pickett advised Lamb to meet with Kelley at the school district board office. Pickett and Kocher also attended the meeting. Kelley informed Lamb that he was being placed on paid administrative leave. On December 11, 2017, Kelley interviewed Lamb. Lamb generally agreed with Kelley's testimony regarding what transpired during the December 11, 2017 interview.

{¶ 12} Kocher testified that after he and Lamb left the December 8, 2017 meeting, they ran into Moore. Lamb and Moore discussed the events of the previous day. After Moore denied telling Lamb that he received overtime authorization from Pickett, Lamb called Moore a "fucking liar." *Id.* at 120.

{¶ 13} On June 13, 2018, the Commission upheld the board's decision to terminate Lamb's employment. The Commission concluded that Lamb "did act in a threatening manner, created a hostile work environment and showed lack of respect for a supervisor."

{¶ 14} Lamb appealed the Commission's order to the common pleas court. In a judgment dated November 22, 2019, the common pleas court affirmed the Commission's order, finding that "[u]pon weighing of the evidence in the whole record * * * the Commission's Decision that [Lamb] acted in a threatening manner, created a hostile work environment, and showed lack of respect for a supervisor is supported by the preponderance of substantial, reliable, and probative evidence." (Nov. 22, 2019 Decision & Entry, at 9-10.)

{¶ 15} Lamb timely appeals and assigns the following errors:

> (1) The Common Pleas Court abused its discretion when it found reliable, probative, and substantial evidence without showing where witnesses' testimony was contradictory, lacked credibility, or was internally inconsistent. The videos, as documentary evidence, carried greater weight of credibility

than testimonial evidence. Judge Lynch concurred with Mr. Lamb's sworn testimony from the videos of what unfolded that morning at the job meeting. But in the judgment entry dated November 22, 2019, she, however, granted deference to the Civil Service Commission. She stated, [t]here was on approximate equal weight of credibility, which was impugned by observation of the videos, therefore deference should not have been granted. The court must defer to factual findings. The reviewing court should not substitute its judgment for that of the administrative agency, as the United States Supreme Court has ruled that deference is only available after a court makes and "independent inquiry into whether the character and content of the agency's interpretation entitles it to controlling weight."

(2) The second assignment of error in the abuse of discretion is to the issue of facts. The statutory rights of the appellant were denied to him. The appellant argues that the factual finding was not based on statutory law, thus violating the appellant's civil rights.

(3) The court abused its discretion by not ordering a dismissal of the case in favor of the appellant when a motion for dismissal was submitted by his counsel for the agency's failure to meet deadline for certification of the record. The administration, under law 119.12 is clear and concise. The agency was even granted an extra 30-day extension and did not meet that deadline. The case should have been dismissed.

{¶ 16} Preliminarily, we note that although Lamb sets forth assignments of error for this court to review, he does not separately argue them in the body of his brief. For the most part, Lamb's brief presents a somewhat rambling diatribe which predominately serves to vent his frustration at the outcome of the current proceedings and to rehash previous disputes with the school district. Lamb's assignments of error, without corresponding arguments, are set forth in the last 3 pages of his 70-page brief. As a result, Lamb's brief violates App.R. 16(A)(7), which requires an appellant to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶ 17} A court of appeals has discretion to disregard an assignment of error for review if the party raising it "fails to argue the assignment of error separately in the brief,

as required under App.R. 16(A)." App.R. 12(A)(2). *See, e.g., State v. Brown*, 10th Dist. No. 16AP-753, 2017-Ohio-7134, ¶ 14 (declining to address portion of assignment [of error] not argued separately in the body of the brief). However, given Lamb's attempt to articulate arguments pertaining to his first and second assignments of error, and in the interests of justice, we will address these assignments of error to the extent we understand them.

{¶ 18} Lamb essentially contends that the common pleas court abused its discretion in determining that the Commission's decision affirming the termination of his employment was supported by the preponderance of reliable, probative, and substantial evidence. We disagree.

{¶ 19} Prior to reviewing appellant's arguments, we recall the applicable standard of review for both the common pleas court and this court. Administrative appeals from decisions of municipal civil service commissions are governed by R.C. Chapter 2506. *Meyers v. City of Columbus*, 10th Dist. No. 07AP-958, 2008-Ohio-3521, ¶ 7. Under R.C. 2506.01(A), "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided for in Chapter 2505 of the Revised Code." If an appeal is taken pursuant to a final order, adjudication, or decision covered under R.C. 2605.01(A), the common pleas court must determine whether the order appealed is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. Consistent with its findings, the court may then "affirm, reverse, vacate, or modify the order * * * or remand the cause" to the Commission "with instructions to enter an order * * * consistent with the findings or opinion of the court." R.C. 2506.04.

{¶ 20} "Although a review under R.C. 2506.04 is not de novo, it often resembles a de novo proceeding because the reviewing court weighs the evidence in the 'whole record' in determining whether the administrative decision is supported by the preponderance of substantial, reliable, and probative evidence." *Athenry Shoppers Ltd. v. Planning & Zoning Comm. of Dublin*, 10th Dist. No. 08AP-742, 2009-Ohio-2230, ¶ 16, citing *Dudukovich v. Lorain Metro. Housing Auth.*, 58 Ohio St.2d 202, 206-07 (1979). Analogizing the R.C. 2506.04 review standard to the standard of review set forth in R.C.

119.12 appeals, the *Dudukovich* court noted that " 'the Court of Common Pleas * * * must give consideration to the entire record * * * and must *appraise* all such evidence as to the credibility of the witnesses, the probative character of the evidence, and the *weight* to be given it * * *.' "  *Id.* at 207, quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275 (1955), paragraph one of the syllabus.  Thus, the common pleas court must weigh the evidence in the record to determine whether there exists a preponderance of reliable, probative, and substantial evidence to support the agency decision.  *Id.*  The court cautioned, however, that "this does not mean that the court may blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise.  The key term is 'preponderance.'  If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand."  *Id.*

{¶ 21}  This court has characterized the R.C. 2506.04 standard as a hybrid form of review due to the balance the common pleas court must maintain.  *Athenry Shoppers* at ¶ 17, citing *Elbert v. Bexley Planning Comm.*, 108 Ohio App.3d 59, 66 (10th Dist.1995).  The common pleas court must weigh the evidence to determine whether the administrative decision is supported by the preponderance of substantial, reliable, and probative evidence, but still give due deference to the administrative agency's resolution of evidentiary conflicts and not blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise.  *Id.*  An administrative decision is presumed to be valid, placing the burden of persuasion upon the party contesting the decision.  *Meyers* at ¶ 7, citing *Budd Co. v. Mercer*, 14 Ohio App.3d 269 (6th Dist.1984).

{¶ 22}  In contrast, the standard of review to be applied by the court of appeals is more limited in scope.  *Athenry* at ¶ 18, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000).  The court of appeals reviews the common pleas court's judgment only on questions of law and lacks the extensive power granted to the court of common pleas to weigh the evidence.  *Hassey v. City of Columbus*, 10th Dist. No. 17AP-726, 2018-Ohio-3958, ¶ 18, citing *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 14.  " 'In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance.  It permits reversal only when the common pleas court errs in its application or interpretation

of the law or its decision is unsupported by a preponderance of the evidence as a matter of law.' " *Id.*, quoting *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 25. "Our review is limited to the issue of whether the trial court abused its discretion in finding that a preponderance of reliable, probative, and substantial evidence exists to support the decision of the agency." *Sellars v. Dublin City Sch. Dist. Bd. of Edn.*, 12AP-1007, 2013-Ohio-3367, ¶ 9, citing *Barristers, Inc. v. Westerville City Council*, 10th Dist. No. 03AP-1073, 2004-Ohio-2533, ¶ 13.

{¶ 23} Here, Lamb contends that the common pleas court abused its discretion in finding that the preponderance of reliable, probative, and substantial evidence supported the Commission's decision to terminate his employment. In essence, Lamb argues that the preponderance of reliable, probative, and substantial evidence presented at the Commission hearing supported his version of the events of December 8, 2017, i.e., that he felt threatened when Moore pointed his finger at Pickett and then him, and that he acted in "self-defense" in swatting Moore's hand away. (Appellant's Brief at 1, 2, 51.) Indeed, Lamb maintains that "the evidence in this case gives much greater weight of credibility to Mr. Lamb that it does to the school's supervision." *Id.* at 66.

{¶ 24} In particular, Lamb challenges the credibility of the testimony provided by school district witnesses Pickett, Reed, and Kelley. Lamb asserts that the testimony of Reed and Pickett characterizing him as the "aggressor" during the incident stemmed from their "motive and intent of supervision to fire Mr. Lamb at any cost, no matter how unreasonable." *Id.* at 50. Lamb maintains that "any reasonable person reviewing the videos would reasonably conclude that Mr. Lamb was the victim, defending himself, while his co-worker, Mr. Rob Moore, was the aggressor. Mr. Moore received no discipline, which is egregious by itself." *Id.* Lamb also notes that Kelley did not interview him on December 8, 2017, the day of the incident; rather, she waited until December 11, 2017 to interview him. Lamb avers that "[t]he fact that Mr. Lamb was never given the chance to tell his side of the story until four days later is appalling and demonstrates the motivation and intent of management to fire Mr. Lamb." *Id.* at 54.

{¶ 25} Pursuant to its review under R.C. 2506.04, the common pleas court was required to consider the entire record and evaluate all evidence as to witness credibility, the probative character of the evidence, and the weight to be given the evidence. *Dudukovich,*

58 Ohio St.2d, at 207. Here, the court specifically stated that it "reviewed the entire record filed in this case, including the two videos." (Nov. 22, 2019 Decision & Entry, at 5.) The court's decision substantiates this statement, as it sets forth a detailed account of the testimony provided at the Commission hearing, including that provided by Lamb.

{¶ 26} The court also addressed Lamb's arguments regarding witness credibility and the weight to be afforded the witnesses' testimony. The court noted Lamb's contention that "his testimony clearly provided evidence that he did not engage in threatening conduct, call Mr. Moore vulgar and demeaning names, or act dishonestly because Appellant consistently denied using profanity during the Incident." *Id.* The court further noted, however, that "[a]ppellant's briefs also acknowledge that the Board heard testimony that directly contradicted Appellant's version of what happened in the incident." *Id.* The court stated that "[i]t is clear that the Commission found Appellant's testimony to lack credibility and found the testimony of Mr. Moore, Mr. Pickett, Ms. Kelley, and Mr. Reed credible. Other than the fact that Appellant's testimony contradicts the testimony of Mr. Moore, Mr. Pickett, Ms. Kelley, and Mr. Reed, this Court sees nothing to question the Commission's credibility determinations. This includes what is portrayed in the two videos of the incident. As such, this Court must defer to the Commission's resolution of the evidentiary conflicts." *Id.* at 10.

{¶ 27} It is clear that the common pleas court, pursuant to its statutory responsibility under R.C. 2506.04 and concomitant case law, considered the entire record and evaluated all evidence as to witness credibility, the probative character of the evidence and the weight to be given the evidence, and, giving due deference to the Commission's resolution of evidentiary conflicts, concluded that such decision was supported by the preponderance of reliable, probative, and substantial evidence. Employing the very limited and deferential standard of review afforded a court of appeals pursuant to R.C. 2506.04, we cannot find that the common pleas court abused its discretion in so finding.

{¶ 28} The first and second assignments of error are overruled.

{¶ 29} In his third assignment of error, Lamb contends that the common pleas court abused its discretion in denying his motion to dismiss the case based upon the Commission's alleged failure to timely file the certified record.

{¶ 30} In contrast to the first and second assignments of error, where the arguments set forth in the body of Lamb's brief can be interpreted and understood to relate to those assignments of error, Lamb presents absolutely no argument in his 70-page merit brief to support the issue raised in his third assignment of error. Indeed, Lamb does not mention the common pleas court's denial of his motion to dismiss, let alone assert an argument in support of the bald assertion in his assignment of error that the trial court abused its discretion in denying his motion to dismiss.

{¶ 31} "It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error." *Bond v. Village of Canal Winchester*, 10th Dist. No. 07AP-556, 2008-Ohio-945, ¶ 16, citing *Whitehall v. Ruckman*, 10th Dist. No. 07AP-445, 2007-Ohio-6780, ¶ 20. " 'It is not the duty of [an appellate] court to search the record for evidence to support the appellant's argument as to the alleged error.' " *Ruckman* at ¶ 20, quoting *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 94 (10th Dist.) " ' "If an argument exists that can support [an] assignment of error, it is not [an appellate] court's duty to root it out." ' " *Id.*, quoting *Petro* at ¶ 94, quoting *Cardone v. Cardone*, 9th Dist. No. 18349 (May 6, 1998). In the absence of any argument related to his third assignment of error, we decline to consider it.

{¶ 32} The third assignment of error is overruled.

{¶ 33} Having overruled the first, second, and third assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

————————