[Cite as *CLE Venture Fund, L.P. v Coventry Partners, L.L.C.*, 2025-Ohio-2451.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CLE VENTURE FUND L.P.,                    :

      Plaintiff-Appellee,          :

                                No. 114383

      v.                                        :

COVENTRY  PARTNERS LLC            :
ET AL.,

      Defendants-Appellants.     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:** July 10, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-952010

---

### *Appearances:*

Taft Stettinius & Hollister LLP, William A. Doyle, Julie A. Crocker, and Allison R. McFarland, *for appellee.*

Law Office of John R. Christie, LLC, and John R. Christie, *for appellants.*

EMANUELLA D. GROVES, J.:

{¶ 1}  Defendants-appellants Coventry Courts LLC ("Coventry I"), Coventry Court LLC ("Coventry II"), and John Crigler ("Crigler") (collectively, the "Appellants") appeal the trial court's decision determining a property's retrospective

value in relation to an award for damages. For the reasons that follow, we affirm the decision of the trial court.

**Factual and Procedural History**

{¶ 2} In November 2015, Coventry I and Coventry II borrowed $1,600,000 from CLE Venture Fund, L.P. ("Appellee") to finance a property development at 9410 Hough Street in Cleveland as well as two nearby vacant parcels on Crawford and East 93rd Street (collectively, the "Property"). The loan was secured by a promissory note dated November 4, 2015, for the full amount. It was also secured by a mortgage on the property between Coventry I and Appellee. Coventry II and Crigler executed a separate guarantee for all of Coventry I's indebtedness. The entire balance, including accrued interest, was due and payable by November 4, 2016, or May 4, 2017, if Coventry I and II extended the maturity date.

{¶ 3} Coventry I and II extended the maturity date but ultimately defaulted on the loan. Additionally, Coventry II and Crigler failed to pay the entire balance after the default, thereby defaulting on their obligation as guarantors. The parties subsequently entered into a forbearance agreement, which established that Appellee would not pursue its rights under the previous agreements as long as Appellants, among other things, paid all amounts due by September 5, 2017. Simultaneously, the parties entered into a deed-in-lieu of foreclosure agreement. Pursuant to that agreement, a deed transferring the Property to Appellee was placed in escrow during the forbearance period and was to be turned over to Appellee if Appellants failed to comply with the forbearance agreement. In addition to other terms, the parties also

agreed that Appellants' indebtedness under the loan continued after the "closing," which was defined as "the recordation of the deed referenced in the escrow agreement," in the event of default.

{¶ 4} Appellants subsequently failed to make payment by the forbearance deadline. On September 15, 2017, Appellee filed suit against Appellants in Cuyahoga C.P. No. CV 17-885989 ("CV 17-885989"). Subsequently, Appellee obtained the deed to the Property and recorded it on March 27, 2018. Appellee voluntarily dismissed the case in August 2019. On June 16, 2021, Appellee sold the property to a third-party buyer for $1,548,000. Nevertheless, Appellee calculated that Appellants still owed almost $2.5 million after sale of the Property, including default interest and collection costs. Appellee filed the instant action, Cuyahoga C.P. No. CV 21-952020, on August 23, 2021, alleging breach of the note and guaranty against the Appellants and requesting $2,446,775.94 in damages, plus suitable attorney fees.

{¶ 5} Both parties filed for summary judgment in July 2022. The trial court granted Appellee's motion with respect to liability noting:

> (1) [Appellants] are in material breach of the loan documents, as [appellants] failed to pay amounts due and owing to [Appellee] prior to the expiration of the forbearance period on 09/05/2017.
>
> (2) As a matter of contract interpretation, the court finds that pursuant to § 4 of the deed-in-lieu of foreclosure agreement, as soon as [Appellee] exercised its rights under the deed-in-lieu by taking title to the property on 03/27/2018, the fair market value of the property at the time of such transfer needed to be recognized, applied, and credited towards the outstanding indebtedness of the [Appellants] at the time of such transfer. See deed-in-lieu of foreclosure agreement, § 4 ("as of

the closing, lender shall credit the indebtedness owing under the loan documents in amount equal to the sale value or funds received for the property, minus any closing costs of the lender").

(3) "As of the closing" is the operative language of this agreement. As [Appellants] point out, no language in the deed in lieu of foreclosure agreement requires the [Appellee] to sell or otherwise liquidate the property. Indeed, § 6 of the deed in lieu of foreclosure agreement gives the lender the immediate right to see/transfer the property for its own account. § 6 does not impose an obligation upon the [Appellee] to subsequently liquidate the property and then credit the sales proceeds of the property, at the time of sale, to [Appellants'] preexisting indebtedness.

(4) Thus, when [Appellee]/lender sold the property to a third-party buyer on 06/16/2021, recouping $1,548,000.00 in sales proceeds, these proceeds were for the [Appellee]/lenders "own account" and were intended to lessen any possible deficiency remaining on amounts owed under the loan documents post-closing on 03/27/2018.

(5) Accordingly, as stated previously by the court in its 1/28/2019 Journal Entry in case no. CV-17-885989, a genuine issue of material fact still exists, as to the issue of damages only.

**{¶ 6}** The trial court denied Appellants' motion for summary judgment finding that Appellee's claims were not barred by res judicata as there was no final judgment in CV-17-885989. Additionally, the court found that Appellants' argument that the transfer of the property resolved the debt lacked merit because the parties' agreements stated the debt survived the transfer.

**{¶ 7}** The case was continued for trial, solely to determine the retrospective value of the Property on the date of transfer, March 27, 2018. The value of the Property would offset the amount Appellants owed on the debt.

{¶ 8} The trial commenced in December 2024. Appellee called Robert Vodinelic ("Vodinelic") as their expert witness. He worked with a colleague, Katherine Boro, ("Boro"), to prepare the expert report.

{¶ 9} Vodinelic testified that he, in collaboration with Boro, provided an expert opinion on the retrospective market value of the Property as of March 27, 2018. Vodinelic identified the three parcels of the Property and noted that two were vacant lots and one had an abandoned "shell" apartment building. To his knowledge, the building had been vacant for ten years or more and showed signs of deterioration and neglect, with broken and boarded windows and boarded doors. The building was also subject to a Department of Housing and Urban Development ("HUD") restriction. Vodinelic testified that a HUD restriction would cap rent at a certain level. Such a restriction, Vodinelic testified, could limit the desirability of an asset because it limited the amount of income an owner could receive.

{¶ 10} Vodinelic testified that there are three methodologies used to appraise properties: the cost approach, the sales comparison approach, and the income capitalization approach. Vodinelic testified that he used the sales comparison approach in this case. He did not use the cost approach because with an older asset like the one in question, there were a number of subjective variables, e.g., determining depreciation and factoring in deferred maintenance, i.e., repairs necessary to rehabilitate the building, which made it difficult to determine a reliable value. With respect to the income capitalization method, Vodinelic testified that approach is typically used when the asset is functional. With an abandoned

building, he would need to factor in the costs to make the property functional and then, once it is functional, determine how long it would take to lease units. Those estimates would be challenging, especially for a property that had not been in operation for a decade or more.

{¶ 11} Utilizing the sales comparison approach, Vodinelic testified that he and Boro identified properties similar to the Property, considering and adjusting for differences in the age, condition, size, and other relevant factors to determine a valuation for the three lots. Ultimately, Vodinelic testified that the retrospective value of the Property was $1,310,000. Finally, Appellee's counsel established that Vodinelic was unaware that the HUD restriction had been lifted. Vodinelic was aware that the HUD restriction was placed in a 2008 deed and that a HUD restriction typically remains for 20 years but was unaware the HUD restriction was not included in the deed when Appellee sold the Property in 2021. During this testimony, Appellee showed Vodinelic the deed for the 2021 sale, which was identified and marked as Exhibit C. At the end of the trial, Appellants objected to the admission of Exhibit C and asked that any testimony related to the exhibit be stricken from the record. The trial court did not admit the exhibit but refused to strike the testimony.

{¶ 12} During cross-examination, Appellants questioned Vodinelic about his participation in the appraisal process, focusing on the work he did versus the work Boro did. Initially, Appellants suggested that Vodinelic did not write the report, noting that his role was "more as a supervisor, as a proofreader, and making

sure you were getting your client's goals met." In response, Vodinelic added that he worked as a collaborator, noting that all of those roles go into a "big melting pot." Further, Vodinelic denied creating a report designed to achieve a perceived goal of lowering the valuation. During a later question, Appellants characterized Boro as the author of the report. Appellee objected arguing that the testimony did not establish that Boro was the sole author of the report. In response, Vodinelic testified:

> We collaborated on it together. She may have typed the words. Or when it comes to the analysis, we worked on the analysis together. We're talking about the challenges of the property, the challenges of the market, the approach to value we're going to be using.
>
> So even if she's the one who typed it, it's not like she was working in a vacuum and I only saw the appraisal before it was completed.

{¶ 13} The trial court overruled the objection after additional cross-examination of the witness. During Vodinelic's testimony, Appellants did not object to the admission of his testimony nor challenge the admission of the expert report. Furthermore, contrary to Appellants' assertion at oral argument, they did not move to strike Vodinelic's testimony in its entirety. They only moved to strike any testimony related to the 2021 deed, Exhibit C.

{¶ 14} Appellants called Donald Durrah ("Durrah") as their expert witness. Durrah testified in detail about his methodology and his familiarity with the northeast Ohio market. Durrah opined that knowledge of the region was essential to proper appraisal. Durrah used the sales comparison and the income capitalization methods to arrive at a valuation. However, Durrah was unaware that

there was a HUD restriction on the property and did not factor that information into his calculations. Durrah valued the Property at $2,030,000 by using both valuation methods, giving the valuations a weight in terms of viability, and calculating a weighted average.

{¶ 15} In its ruling, the trial court adopted Appellee's valuation and rejected Appellants' valuation finding that "[t]he Ohio Supreme Court has repeatedly held that when a property is encumbered by HUD or other governmental restrictions on land use, it should be valued as a low-income housing development, and the restrictions must be taken into account."[1]

{¶ 16} However, the trial court noted that even if it were not precluded from considering Appellants' expert report, it would find that the income capitalization approach to valuation was an improper methodology for the Property because it was too speculative. Further, comparing Appellee's sales comparison analysis to Appellants', the trial court found Appellee's expert opinion more persuasive and reliable. In its final order, the trial court found that the Property's value was $1,030,000 as of March 27, 2018, and ordered Appellee to submit a proposed judgment entry outlining the sums it was entitled to under the loan since March 27, 2018, less $1,030,000.

---

[1] Citing *Notestine Manor, Inc. v. Logan Cty. Bd. of Revision*, 152 Ohio St.3d 439; *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 12, ¶ 16, citing *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175.

{¶ 17} On June 14, 2024, the trial court issued a judgment entry addressing damages. Preliminarily, the trial court corrected a scrivener's error regarding the value of the Property, noting that the actual sum should have been $1,310,000 and not $1,030,000, as stated in its trial entry. Next, the trial court explained its calculation of damages. After considering all the relevant factors, the trial court found the Appellants jointly and severally liable in the amount of $1,735,579.45 plus interest at the default rate until paid in full and attorney fees, which would be determined at a separate hearing.

{¶ 18} On July 15, 2024, Appellants filed a notice of appeal. This court dismissed the appeal, finding that the award of attorney fees was still outstanding and the order was not final and appealable. Further, this court noted that the order did not contain language that there was no just cause for delay pursuant to Civ.R. 54(B), which could have permitted appellate consideration, assuming the existence of final order, despite the remaining issues before the trial court. On August 13, 2024, Appellee's attorney filed a notice withdrawing the request for attorney fees. The trial court issued a subsequent journal entry incorporating its previous order and noting that Appellee was no longer requesting attorney fees.

{¶ 19} Appellants appeal and assign the following errors for our review.

### Assignment of Error No. 1

The trial court erred when it allowed an expert who had not authored a report to testify.

## Assignment of Error No. 2

The trial court erred when [it] decided the surrender value on the testimony of an expert who had not viewed the property.

## Assignment of Error No. 3

The trial court erred when [it] decided the surrender value on the testimony of an expert who was not aware that the HUD restriction had been lifted.

## Assignment of Error No. 4

The trial court erred when it allowed and relied upon testimony from an expert who did not prepare the report upon which his opinions were based.

## Law and Analysis

{¶ 20} Appellants argue that the trial court's decision was against the manifest weight of the evidence because Vodinelic did not author the report, he did not visit the Property before signing off on the report, and his testimony was presented in violation of Evid.R. 703. Appellants also take issue with any adjustments or factors Vodinelic used to determine valuation when comparing other properties. Appellants opine that any ruling based on "these suspect opinions" is against the manifest weight of the evidence. We are mindful, however, that in a bench trial, there is a presumption that the trial court only considered "evidence that was reliable, relevant and competent in rendering its decision unless it affirmatively appears to the contrary." *Shaw Steel, Inc. v. Ronfeldt Mfg., L.L.C.*, 2016-Ohio-1117, ¶ 32 (8th Dist.), citing *Sonis v. Rasner*, 2015-Ohio-3028, ¶ 70 (8th Dist.), citing *State v. Pleban*, 2011-Ohio-3254, ¶ 45 (9th Dist.).

{¶ 21} Moreover, Appellee points out that Vodinelic testified extensively regarding his participation in the appraisal process. Regardless, Appellee notes that Appellants failed to object to Vodinelic's testimony and the admission of his expert report. Therefore, Appellee argues that Appellants were required to raise and prove plain error to prevail. Additionally, Appellee argues that Appellants' brief does not comply with App.R. 16(A) and, therefore, this court should dismiss the appeal. There is merit to Appellee's contentions.

{¶ 22} An appellant's brief "shall" contain

> [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

App.R. 16(A)(7).

{¶ 23} Appellants have raised four assignments of error but failed to address each separately as required under App.R. 16(A)(7). This court may "disregard an assignment of error for review if the party raising it 'fails to argue the assignment of error separately in the brief as required under App.R. 16(A).'" *Lamb v. Reynoldsburg Civil Serv. Comm.*, 2021-Ohio-2322, ¶ 17 (10th Dist.) quoting App.R. 12(A)(2).

{¶ 24} Further, Appellants fail to cite legal authority for their argument regarding the expert witness. Other than Evid.R. 703, Appellants have cited no legal authority for the proposition that Appellee's expert testimony was improperly admitted because he merely supervised and did not author the report. Nonetheless,

the record reflects that Vodinelic testified that he supervised and collaborated with Boro at all steps of the appraisal. The trial court is presumed to know the law and, absent evidence to the contrary, is presumed to have appropriately considered the evidence before it. In its ruling, the trial court found Vodinelic's testimony and expert report relevant and admissible. Appellants have failed to cite the record or any case law to establish that the trial court acted inappropriately.

{¶ 25} Additionally, Appellants failed to object at the trial court level and failed to raise a plain error argument in this appeal. When a party fails to raise an objection before the trial court, they waive that issue on appeal absent a claim of plain error. *Linder v. Ohio Dept. of Aging*, 2022-Ohio-177, ¶ 15 (1st Dist.). Further, we need not address an issue when the appellant fails to timely raise plain error. *Nationstar Mortg. L.L.C. v. Jessie*, 2021-Ohio-439, ¶ 21 (8th Dist.). Further, "[a]n appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7)." *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 72 (8th Dist.).

{¶ 26} Finally, Appellants argue that Durrah's valuation was superior to Vodinelic's. However, they fail to address the trial court's finding that Ohio Supreme Court precedent prevented it from considering Durrah's valuation because he failed to address the HUD restrictions. Further, Appellants challenge Appellee's expert opinion and testimony because Vodinelic was unaware that the HUD restrictions were lifted. Notably, they failed to explain how the lifting of the HUD restriction in 2021 would affect a retrospective valuation for the Property in 2018, when the HUD

restriction was presumably still in place. The uncontradicted testimony from Vodinelic noted that the 2008 deed to the property held the restriction and that HUD restrictions typically last 20 years. An appellate court is not required to search the record for evidence in support of an appellant's argument nor is it required to search for supportive law. *Mayfair Vill. Condo. Owners Ass'n. v. Grynko*, 2013-Ohio-2100, ¶ 6 (8th Dist.), citing *Nob Hill E. Condo. Assn. v. Grundstein*, 2011-Ohio-2552, ¶ 11 (8th Dist.), and *Strauss* at ¶ 72.

{¶ 27} Based on the foregoing, Appellants' failures to separately address the assignments of error and cite to relevant legal authority, prevents this court from determining the existence of reversible error. Accordingly, we overrule Appellants' assignments of error.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR